# CHICAGO BONDING AND INSURANCE COMPANY

## *vs.*

## STATE OF MARYLAND, TO THE USE OF R. C. HOFFMAN & COMPANY, INCORPORATED.

*Indemnity Bonds—Discharge of Surety—Deviation from Contract—Damages—Evidence.*

Where a contract for the sale of material on a line of railway provided that the buyer might take and ship material to the amount of the original payment made by him on the contract, but that after the "exhaustion" of such payment the buyer should make a further payment before taking other material, and that all the material should be paid for within sixty days, *held* that the making of additional payments by the buyer even before the exhaustion of the original payment did not involve such a deviation from the contract as to discharge the surety on a bond given to indemnify the buyer against a possible failure of title to the material. pp. 135, 136

In an action on a bond given to protect the buyer of certain material against any possible failure of title, he may recover for the cost to which he was subjected in preparing for the shipment of material of which he was deprived by reason of a failure of title. p. 137

In an action on an indemnity bond, given to protect the buyer of certain material, constituting part of a railway line, against a failure of title and against incumbrances, the fact that the material is subject to a railway mortgage, the bonds secured by which are all outstanding, does not render relevant the question of the ownership of such bonds. p. 138

*Decided November 17th, 1920.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Edward L. Ward,* with whom was *Edward N. Wells* on the brief, for the appellant.

*Joseph France* and *Harry N. Baetjer,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellee.

URNER, J., delivered the opinion of the court.

By a contract in writing dated December 10, 1918, R. C. Hoffman and Company, Incorporated, purchased from Franklin Helm all of the rails, angle bars, frogs, switches and ties constituting a line of railroad about ten miles long, in Dauphin County, Pennsylvania, referred to as having been previously owned by the Midland Pennsylvania Railway Company, together with certain other material used, or intended for use, in the construction of the railroad. The prices specified were $44 per ton for part of the metal equipment and $20 for the remainder, while for the ties it was agreed that the purchaser should pay one-half of the profit realized from their resale after deducting the cost of their removal and disposition. It was provided that a portion of the material, which was stored in a warehouse adjacent to the railroad, at Millersburg, Pennsylvania, should be delivered f. o. b. at that point, and the delivery of the other material should be as it was then incorporated in the line of the railway, or located along the right of way, and should "be removed, prepared for shipment, and shipped by the buyer, at its own expense."

The contract contains the following recital and provisions as to the payment of the purchase price:

"Twenty thousand dollars ($20,000.00) has been paid simultaneously with the signing of this agreement as against which payment the buyer shall be entitled to take and ship such of the material sold as it shall select to the amount of such deposit, twenty thousand dollars ($20,000.00), at the above rates per ton. Upon the exhaustion of the amount of said deposit, the buyer shall make a further payment or deposit to or

with the seller of an amount equal to 80% of the above rates of the material remaining, against which deposit it shall be entitled to ship such of the material remaining as it shall select, to the value of said deposit so made, figured, at the above rates, after which the material remaining shall be paid for by the buyer to the seller at the above rates, as the same is shipped by the buyer from Millersburg, Pennsylvania. In all cases the railroad weight shall govern."

"The buyer agrees to pay for the material purchased within sixty days from the date hereof, whether the material shall have been shipped by it or not, provided, however, that the seller shall afford to the buyer at Millersburg, Pennsylvania, ground space for storing such of the material purchased as it may not ship within said period of sixty days, such storage space to be provided by the seller to the buyer, free of cost or expense to it, for a period of six months from the date hereof."

It was further agreed as follows:

"Upon failure or inability of the seller to deliver without hindrance to the buyer of any of the material hereby contracted to be sold, the seller shall refund to the buyer the amounts paid on account of the purchase price hereunder less the value at the above rates, of such of the material sold as shall have heretofore been delivered, free of encumbrance or lien, to the buyer."

The appellant bonding company executed a bond, in the sum of $20,000, providing indemnity to the R. C. Hoffman & Company, Incorporated, as the purchaser under the contract of sale, in the event of the failure of the vendor to faithfully perform the contract according to its terms and to deliver the sold material "by good and merchantable title, free of liens and encumbrances."

After railway material had been removed under the contract to the amount of $8,392.43, as measured by its resale value, and after all the rails had been taken up and the whole

of the purchased equipment brought together at Millersburg, the purchasing corporation was notified by the Commonwealth Title, Insurance and Trust Company that it held as trustee a mortgage executed by the Midland Pennsylvania Railroad Company covering the railway in question and all of its property, and that proceedings would be taken to enforce liability for its removal. This notification, of course, at once brought to an end the operations under the contract of sale. Meanwhile four payments, aggregating $18,000, had been made on account of the purchase in addition to the preliminary payment of $20,000. In the pending suit on the vendor's bond for breach of his contractual duty "to refund to the buyer the amount paid on account of the purchase price," beyond the value of the removed material, in view of "the inability of the seller to deliver without hindrance to the buyer" a large proportion of the material contracted to be sold, the defense of the surety company is that the additional payments just mentioned were made and accepted contrary to the provisions of the contract of sale, and constituted such a material departure from its terms as to discharge the liability of the surety on the bond. This view was asserted in two prayers, which unsuccessfully sought a directed verdict for the defendant bonding company. The verdict and judgment being in favor of the plaintiff for the sum of $20,000, the defendant has appealed.

The theory of the defense is that no payments were to be made under the contract of sale, in addition to the original fund of $20,000, until the "exhaustion" of that deposit by the removal of material having a corresponding value at the specified rates, and that since the purchaser never in fact removed material to the value of $20,000, the additional payments were all made prematurely, and involved the asserted deviation from the contract upon which the defendant surety company relies as a sufficient ground for its discharge from liability. The validity of this contention depends upon the proper construction of the contract upon which the bond in

suit is predicated.  Each of the relevant terms of the agreement must be considered and given its intended effect.  The provision that the buyer "shall be entitled to take and ship such of the material sold as it shall select to the amount of" the $20,000 payment, at the stated rates per ton, must be construed in connection with the further requirement that the buyer shall "pay for the material purchased within sixty days" from the date of the contract, even though the material had not then been shipped.  In the light of the positive stipulation for the payment of the whole purchase price within sixty days, without reference to the value of shipments made during that period, it is plain that the provision quoted as to the $20,000 fund was intended only to prevent the removal of material exceeding that amount in value until further advance payments were made on account of the purchase, and that it was not designed to prevent additional payments before equipment to the value of $20,000 had actually been removed. In order to adopt the contrary view, it would be necessary to conclude that the purchaser could have refused for an indefinite period to pay the balance of the purchase price merely because he had failed to ship away material to the value of the amount previously paid.  Such a construction of the contract would nullify the provision that the property sold must be paid for within sixty days after the date of the contract regardless of the fact or time of shipment.  The proviso which is attached to that stipulation and which requires the vendor to "afford to the buyer at Millersburg, Pennsylvania, ground space for storing such of the material purchased as it may not ship within said period of sixty days," appears to have been complied with according to the testimony as to the collection and storage of all the equipment at that place, to which we have already referred.  Our conclusion is that the contract does not bear the interpretation for which the appellant contends, and that the payments alleged to have materially varied the contractual rights and relations of the parties have not had that consequence in fact or in law.  The prayers

which asserted the opposite theory were therefore, in our opinion, properly refused.

Objection was made to an instruction granted at the instance of the plaintiff, defining the measure of damages, because it omitted to provide that credit should be given for the value of the property delivered and resold. But it is clearly apparent from the record that if the plaintiff was found to be entitled to recover, the verdict could not have justly been for less than the amount it awarded, after full allowance is made for the credit claimed. The total amount of the payments on account of the purchase was $38,000. In connection with two of the payments, of $5,000 each, the vendor delivered to the plaintiff endorsed promissory notes of a third party for sums equal to those payments, and the notes were subsequently paid to the plaintiff by the maker. The amount of the payments chargeable against the vendor was thus reduced to $28,000. The cost incurred by the plaintiff in the taking up of the railway track and the collection of the material, a large part of which he has been prevented from removing, was in excess of $4,000. While the plaintiff agreed to remove the purchased property, except the cross-ties, at his own expense, yet he is properly allowable, as an element of recoverable damages in this suit, for the cost to which he was subjected in preparing for the shipment of material of which he has been deprived through the failure of the vendor's title. When a due proportion of the total cost of such work is added to the payment charges, and the sum of $8,392.43 is then deducted as representing the proceeds of the resale of material by the plaintiff, the resulting balance is necessarily well beyond the amount of the verdict rendered. There was consequently no prejudice to the defendant in the granting of the prayer by which the court instructed itself, sitting as a jury, in reference to the measure of damages.

The only other exception in the case is to the admission of the deposition of a non-resident witness, taken before a notary public in pursuance of the usual notice and practice. The objection to the testimony was that the witness, who is the

president of the Commonwealth Title Insurance and Trust Company, the mortgagee in trust of the railroad in question, promised on cross-examination that he would obtain and deliver to the notary, to be returned with the deposition, a list of the bondholders entitled to the security of the mortgage and of those who requested that the mortgage be foreclosed, but that no such list was produced. It is stated in the appellant's brief that the list of bondholders was desired as an aid to the inquiry as to whether the vendor of the railway equipment was not in fact the owner of all of the bonds secured by the mortgage. No evidence of such ownership was offered by the appellant, and the only testimony on that subject tended to show that the vendor of the material had contracted to buy, but had not paid for $81,700 of the railway bonds which had been issued in regular form, and that *"ad interim"* bonds had been issued to the amount of $812,300. It was proven without contradiction that the bonds are all outstanding and that the mortgage is unreleased, in default, and in process of foreclosure. It is a sufficient answer to the objection made, on the ground stated, to the admission of the deposition, to say that the list of bondholders which the witness failed to produce was irrelevant to the issue in the case on trial. The question as to the ownership of the railway bonds could not be collaterally determined in this suit on a bond of indemnity given by one who contracted to sell the material of which the railway was constructed. Under the terms of the contract of sale, and of the bond in suit, the purchaser was assured a title free of incumbrances and the right to the possession of the property without hindrance. The evidence which the appellant sought to have returned with the deposition excepted to would not have tended to prove that those important conditions of the sale had been fulfilled.

*Judgment affirmed, with costs.*